# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

**In Re:**

BRADLEY GENE BAUER,

        Debtor.

**Bankruptcy Case
No. 05-40208**

_____

**In Re:**

WENDY LEE BAUER,

        **Debtor.**

**Bankruptcy Case
No. 05-40209**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

      John Avery, Idaho Falls, Idaho, Attorney for Debtors.

      Monte Gray, SERVICE SPINNER & GRAY, Pocatello, Idaho, Attorney for Zions First National Bank.

      R. Sam Hopkins, Pocatello, Idaho, Trustee.

MEMORANDUM OF DECISION - 1

## BACKGROUND

Debtors Bradley Gene Bauer and Wendy Lee Bauer[1] filed these two Chapter 7 bankruptcy cases while married, but in the midst of a divorce. They believe they are each entitled to claim a homestead exemption. Toward that end, Bradley claimed a homestead exemption in a parcel of bare ground, referred to as White Owl Farm, that he owns in Madison County, Idaho. Sched. C, Docket No. 1, Case No. 05-40208. In her bankruptcy case, Wendy claimed a homestead exemption in the couple's former residence in St. Anthony, Fremont County, Idaho (the "House"). Sched. C, Docket No. 1, Case No. 05-40209. R. Sam Hopkins, the Chapter 7 Trustee in both cases, objected to the allowance of either Wendy's or Bradley's exemption claim. Docket No. 17, Case No. 05-40208; Docket No. 10, Case No. 05-40209.

On June 24, 2005, the Court conducted a consolidated hearing concerning Trustee's objections. It also considered the Debtors' request to approve an agreement Bradley and Wendy executed with Creditor Zions Bank reaffirming a debt secured by a second priority deed of trust on the House. Docket No. 21, Case No. 05-40208; Docket No. 14, Case No. 05-40209. At the

---

[1] The Court refers to the Bauers collectively as "Debtors" and individually by their first names. No disrespect is intended.

MEMORANDUM OF DECISION - 2

conclusion of the hearing, the Court took the issues under advisement.  As allowed

by the Court, the parties filed post-hearing briefs.  Docket Nos. 30, 31, Case No.

05-40208; Docket Nos. 22, 23, Case No. 05-40209.  What follows constitutes the

Court's findings of fact, conclusions of law and disposition of the issues.  Fed. R.

Bankr. P. 7052; 9014.

## FACTS

The parties stipulated to the relevant facts.  Ex. 1.[2]

Wendy and Bradley were married on December 4, 1999, and moved

into the House, which Bradley owned prior to their marriage.  The couple

separated on May 7, 2004.  Wendy moved into a rented apartment; Bradley

continued to reside in the House.  Wendy later filed for divorce in state court on

October 12, 2004.   In the divorce action, Bradley took the position that the House

was his separate property, while Wendy considers the House to be Debtors'

community property due to their decision to refinance the existing mortgage after

their marriage.

In anticipation of dividing their property in the divorce and

protecting their exemption claims, on December 22, 2004, Wendy and Bradley

---

[2] Debtors offered two stipulations into evidence at the hearing, both marked as
Exhibit 1 in their respective cases.  Ex. 1, Docket No. 18, Bankr. Case No. 05-40209; Ex.
1, Docket No. 25, Bankr. Case No. 05-40208.

MEMORANDUM OF DECISION - 3

executed and recorded several declarations at the following times:

> – At 1:15 p.m., Bradley recorded a Declaration of Abandonment of Homestead with the Fremont County recorder's office, expressing his intent to abandon any homestead he had previously claimed in the House.

> – At 1:16 p.m., Wendy recorded a Declaration of Nonabandonment of Homestead with the Fremont County recorder's office, expressing her intent to claim the House as her homestead despite the fact she was residing elsewhere at the time.

> – And later that afternoon, at 4:20 p.m., Bradley recorded a Declaration of Homestead with the Madison County recorder's office, indicating his intent to claim the bare ground, White Owl Farm, as his homestead.

On February 11, 2005, Wendy and Bradley each electronically filed separate voluntary Chapter 7 bankruptcy petitions with this Court. Bradley's petition was filed first, at 7:18 p.m; Wendy's petition followed at 7:29 p.m. Notice of Electronic Filing, Docket No. 1, Bankr. Case Nos. 05-40208; 05-40209.[3] In his schedules, Bradley claimed a homestead exemption in White Owl Farm. Schedule C, Docket No. 1, Bankr. Case No. 05-40208. Wendy's schedules reflected her claim of a homestead exemption in the House. Schedule C, Docket No. 1, Bankr.

---

[3] The Court takes judicial notice of the records created by its electronic filing system concerning the time the bankruptcy petitions were filed. Fed. R. Evid. 201(b)(2); *First Capitol Asset Mgt. Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576, 584 (S.D.N.Y. 2002) (noting that the district court could take judicial notice of the bankruptcy court's electronic filing records).

Case No. 05-40209.  When these petitions were filed, Wendy and Bradley were still married, and they had not reached a property settlement in their divorce action.

As noted above, the House secures a debt to Creditor Zions Bank in the amount of $27,661.  Countrywide holds a first mortgage securing a debt of $86,000.  Schedule D, Docket No. 1, Bankr. Case Nos. 05-40208; 05-40209. Wendy and Bradley each estimate the value of the House is $160,000.  Thus, exclusive of any liquidation costs, there is $46,339 in equity in the House.  If that equity is indeed protected by Wendy's homestead exemption claim, there is ample reason for the parties to reaffirm the debt to Zions.

White Owl Farm has no encumbrances recorded against it, and Bradley apparently owns it together with his previous spouse.  Schedules A, D, Docket No. 1, Bankr. Case No. 05-40208.  Bradley asserts his half ownership interest is worth $50,000, giving the property a total value of $100,000, and the exemption would protect all of his interest in the property.

## ARGUMENTS OF THE PARTIES

Debtors argue that because they were living separate and apart on the date of the bankruptcy filing, each should be entitled to a homestead exemption in

MEMORANDUM OF DECISION - 5

different properties of their choosing under Idaho law.  They point out that Idaho

Code § 55-1002 only prohibits married couples from separately claiming the same

premises as their homestead with the intent to double the exemption.  Since

Bradley and Wendy claim different properties as exempt, they contend this statute

does not bar their claims.

Trustee disagrees for several reasons.  He argues that although

Bradley and Wendy were not living together when they filed their bankruptcy

petitions, they were still married, and under Idaho law, their marital community

was limited to a single homestead exemption claim in one property.  In addition,

Trustee contends that since Bradley was first to file, the bankruptcy estate created

by that filing included all of his separate property (White Owl Farm) and all of the

couple's community property (the House).  Since Bradley's bankruptcy estate

included both properties, Trustee insists Wendy no longer held an interest in the

House to exempt when she filed her petition, and therefore her exemption claim

should be disallowed.  Finally, Trustee argues that the conflicting declarations

executed and recorded by the Debtors rendered them all invalid.  In the Trustee's

view, were he to claim it, Bradley should be allowed a homestead exemption in the

House as provided by Idaho Code § 55-1004(1), because he was residing there on

the date of bankruptcy such that the House would be automatically protected by

MEMORANDUM OF DECISION - 6

the exemption.

After careful consideration of the arguments and authorities, the Court concludes that while Wendy's exemption claim should be disallowed, Bradley's exemption claim in White Owl Farm should be allowed.

## DISCUSSION AND DISPOSITION OF THE ISSUES

### A.  The Bankruptcy Estates.

Under § 541(a)(1) of the Bankruptcy Code, all of the debtor's legal or equitable interests in property as of the commencement of the case become property of the resulting bankruptcy estate.  In addition to including merely the debtor's interests in property, the bankruptcy estate also succeeds to "[a]ll interests of the debtor *and the debtor's spouse* in community property as of the commencement of the case that is . . . under the sole, equal, or joint management and control of the debtor . . . ."  11 U.S.C. § 541(a)(2) (emphasis added).

To determine rights in property, and thus determine the property to be included in the bankruptcy estate, the Court looks to state law.  *Dumas v. Mantle* (*In re Mantle*), 153 F.3d 1082, 1084 (9th Cir. 1998) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)).  In Idaho, all property acquired after marriage by either the husband or wife is presumed to be community property.  Idaho Code §

MEMORANDUM OF DECISION - 7

32-906(1).  Both spouses may manage and control community property.  Idaho

Code § 33-912; *Twin Falls Bank & Trust Co. v. Holley*, 723 P.2d 893, 897 (Idaho

1986) (recognizing that Idaho has established a rule of equal management of

community assets or property).

Recently, in *In re Martell*, 05.2 I.B.C.R. 27, 27 (Bankr. D. Idaho

2005), the Court discussed the interplay between § 541(a) and Idaho's community

property law.  The Court explained that under the statutory scheme, the bankruptcy

estate of a married debtor filing an individual case would include, as of the petition

date, all of his or her interest in separate property; all of his or her interest in any

community property; and all of his or her spouse's interest in any community

property subject to the parties' joint management and control.  In the event a

divorce action is pending, so long as a state court has not yet divided the couple's

property, all community property of the spouses becomes property of the

bankruptcy estate of the first spouse to file a petition.  *Dumas*, 153 F.3d at 1085

("[A]ll community property not yet divided by a state court at the time of the

bankruptcy filing is property of the bankruptcy estate.").[4]  If the other spouse later

---

[4]  *See also Texaco, Inc. v. Bartlett* (*In re Bartlett*), 24 B.R. 605, 608 (B.A.P. 9th
Cir. 1982) ("[A]ll of a couple's California community property becomes part of the estate
of the first spouse to file a petition."); *In re Dehaan*, 275 B.R. 375, 379 (Bankr. D. Idaho
2002) ("[A]ll community property held by Debtor and Defendant on the date Debtor's
bankruptcy petition was filed . . . became property of [his] bankruptcy estate[.]"); *In re
Pixler*, 02.2 I.B.C.R. 87, 88 (Bankr. D. Idaho 2002) (holding that all of a couple's
community owned property became property of the estate of the spouse first to file,

files a petition, the bankruptcy estate would include only any community property

acquired since the first spouse's bankruptcy filing, together with the filing spouse's

separate property.  5 *Collier on Bankruptcy*, ¶ 541.13[2] at 541-81 (Alan N.

Resnick & Henry J. Sommer, eds., 15 ed. rev. 2004).

Against this legal landscape, Bradley's and Wendy's decision to file

separate bankruptcy petitions, rather than to file a joint petition, had important

implications, even though the petitions were filed within a few minutes of each

other on the same day.

**B.  Wendy May Not Claim a Homestead Exemption.**

While filed on the same day, Bradley filed his bankruptcy petition

eleven minutes before Wendy filed hers.  At the time they filed, Bradley and

Wendy were married and their property had not been divided by the state court in

their divorce action.  As a result, because Bradley was the first to file, the

bankruptcy estate created thereby included all of his interest in his separate

property, and all of his and Wendy's interests in their community property.

In the divorce court, Wendy contends the House is community

---

leaving the wife's subsequent bankruptcy estate devoid of any of her interest in
community property administered in her spouse's case); *In re Kido*, 142 B.R. 924, 925
(Bankr. D. Idaho 1992) (explaining that when "one party to the community files a
petition for relief, . . . the community property interests of both parties, or, the entire
community, [becomes] property of the estate[.]").

MEMORANDUM OF DECISION - 9

property.  Bradley argues it is his separate property.  While this disagreement may be significant in state court, it is irrelevant here because Wendy was the last to file and the house was not her separate property.  Therefore, however ownership of the House is viewed, as a matter of federal bankruptcy law, Bradley's bankruptcy estate acquired all of Debtors' collective interests in the House the moment he filed his bankruptcy petition.

On similar facts, the Court in *In re Pixler*, 02.2 I.B.C.R. 87, 89 (Bankr. D. Idaho 2002) came to the same conclusion concerning an exemption claimed in a car that was community property.  The husband filed an individual Chapter 7 petition and claimed an exemption in the car.  When his spouse later filed her own Chapter 7 petition and attempted to claim an exemption in the same car, the trustee objected.  In resolving the issue, the Court explained that, as community property, the car became the property of the husband's bankruptcy estate when he filed his petition.  *In re Pixler*, 02.2 I.B.C.R. at 89.  As a result the wife, who filed the second petition, no longer possessed any interest in the car in which to claim an exemption.  *Id.*

Though Wendy and Bradley filed their petitions just a few minutes apart, instead of several weeks apart as in *Pixler*, the result is the same.  The Code mandates that the moment the bankruptcy petition is filed determines when all of

MEMORANDUM OF DECISION - 10

the debtor's property interests pass into the control of the bankruptcy court and become part of the bankruptcy estate. *White v. Stump*, 266 U.S. 310, 313 (1924). In the age of electronic filing, the time that a petition is filed is tracked precisely and can be especially important. Therefore, because she filed second, Wendy's bankruptcy estate did not include any interest in the House for her to exempt.

While the result may seem harsh for Wendy, it is a hardship of the Debtors' own design. In deciding to file two separate bankruptcy petitions, not one joint petition, and in electing which petition would be first filed, Bradley and Wendy presumably attempted to manipulate the Bankruptcy Code to their advantage. While the Court does not criticize their intentions, their attempt to maximize their exempt property simply failed. Wendy's claim of exemption in the House must be disallowed.[5]

Because Bradley's bankruptcy estate included both the House and White Owl Farm, the Court next must examine which property he is entitled to claim exempt as his homestead in his bankruptcy case. To do so, the Court must determine the status of Debtors' homestead prior to filing bankruptcy and how each of the three recorded declarations affected the homestead.

_____

[5] While not the facts here, the result may have been different had Wendy and Bradley completed the division of their property and divorce prior to filing their Chapter 7 petitions.

MEMORANDUM OF DECISION - 11

**C. The Homestead Exemption.**

    **1. General standards.**

        Individual debtors are entitled to exemptions and can thereby protect a portion of property of the bankruptcy estate from administration by the trustee for the benefit of creditors. 11 U.S.C. § 522(b); *Dehaan*, 275 B.R. at 379. While the Bankruptcy Code provides a list of exemptions debtors may claim under federal law, 11 U.S.C. § 522(d), Idaho has accepted the Code's invitation to restrict its citizens to the exemptions allowed under state law. 11 U.S.C. § 522(b)(1); Idaho Code § 11-609. Under Idaho law, debtors are permitted to claim an exemption in a qualifying homestead. Idaho Code §§ 55-1001–1011; *In re Field*, 05.1 I.B.C.R. 11, 13 (Bankr. D. Idaho 2005); *In re Yackley*, 03.1 I.B.C.R. 84, 84 (Bankr. D. Idaho 2003). The Court liberally construes the homestead statutes in favor of the debtor. *In re Steinmetz*, 261 B.R. 32, 33 (Bankr. D. Idaho 2001); *In re Koopal*, 226 B.R. 888, 890 (Bankr. D. Idaho 1998). But it can not torture the language of the state statutes in the guise of liberal construction. *In re Mason*, 254 B.R. 764, 769 (Bankr. D. Idaho 2000).

        Before a homestead will be protected by the exemption under Idaho Code § 55-1003, the exemption must be established either by occupation as a principal residence by the owner (*i.e.*, the debtor), or through recording the

appropriate declarations required by Idaho Code § 55-1004(2).  *Field*, 05.1
I.B.C.R. at 14; *In re Moore*, 01.4 I.B.C.R. 147, 149 (Bankr. D. Idaho 2001).  An
automatic exemption (*i.e.*, one arising without the need of a recorded declaration)
protects the dwelling house or mobile home owned by the debtor and in which he
resides, as well as the land upon which it sits, from and after the time the property
is occupied as the debtor's principal residence.  Idaho Code § 55-1004(1),
*construed in In re Field*, 05.1 I.B.C.R. at 14.  In the case of all other property
eligible for exemption as described in Idaho Code § 55-1001(2), Idaho Code § 55-
1004(2) requires the debtor to execute and record the proper declarations before
the homestead exemption will be effective.

As the objecting party, the Trustee bears the burden of proving an
exemption is not proper.  Fed. R. Bankr. P. 4003(c); *Steinmetz*, 261 B.R. at 33.
The relevant date for determining the status of a claim of exemption in a
homestead is the date of the bankruptcy filing.  *In re Yackley*, 03.1 I.B.C.R. at 84
(citing 11 U.S.C. § 522(b)(2)(A) and *Culver, L.L.C. v. Chiu* (*In re Chiu*), 226 B.R.
743, 751 (B.A.P. 9th Cir. 2001)).  The amount of the homestead exemption may not
exceed the lesser of the net value of the land, or $50,000.  Idaho Code § 55-1003.

**2.  Under Idaho law, married couples may only claim one homestead,
and are thereby limited to one claim of exemption.**

It has long been accepted that Idaho's homestead statutes permit only

MEMORANDUM OF DECISION - 13

one homestead exemption to be claimed by a married couple.  *In re Tiffany*, 106

B.R. 213, 214 (Bankr. D. Idaho 1989), *cited with approval in In re Yackley*, 03.1

I.B.C.R. 84, 84 (Bankr. D. Idaho 2003).  Both Idaho's homestead statutes and its

laws concerning the division of community property refer to the homestead by use

of a singular, not a plural, noun.  Idaho Code § 55-1001(2) defines a homestead in

a singular manner as "*the dwelling house* . . . . in which the owner resides . . . ."

(emphasis added).  Similarly, when a married couple is seeking a divorce, Idaho

Code § 32-712[6] also speaks in terms of the parties' rights in "*the* homestead," and

assigns ownership of that homestead to one or the other spouse.  The clear

implication is that there can only be but one homestead, and consequently one

exemption, when a couple is married.

        The homestead statutes also contain a prohibition that "the same

premises may not be claimed separately by the husband and wife with the effect of

---

        [6] Idaho Code § 32-712 states as follows:

> Community property and homestead – Disposition. – In case of
> divorce by the decree of a court of competent jurisdiction, the
> community property and *the homestead* must be assigned as follows
> . . .
>
> 2.  If *a homestead* has been selected from the
> community property, *it* may be assigned to either
> party . . . ."

(emphasis added).

MEMORANDUM OF DECISION - 14

increasing the net value of the homestead available to the marital community

beyond the amount specified in section 55-1003, Idaho Code." Idaho Code § 55-

1002. In other words, under this statute, the legislature evinces its intent that a

married couple may not protect by a homestead exemption more than $50,000 in

equity in the same property. Since there can be but one homestead, it was

unnecessary for the legislature to statutorily prohibit a married couple from each

claiming an exemption in different properties because that situation was

impossible under the statutory scheme.

Therefore, as the Court held in *Tiffany*, and now reaffirms, a married

couple in Idaho can claim only one homestead, and one exemption not to exceed

$50,000 in value.

### 3. The signatures of both husband and wife are not required on a declaration affecting a married couple's homestead.

After the couple separated, but before the bankruptcy filings,

Bradley recorded a declaration of abandonment of homestead as to the House;

Wendy next recorded a declaration of nonabandonment of homestead as to the

House; and then Bradley recorded a declaration of homestead as to White Owl

Farm.

Is it significant under Idaho law that the various declarations

employed by Bradley and Wendy did not contain, as married persons dealing with

MEMORANDUM OF DECISION - 15

their homestead exemption right, both of their signatures?  The answer is no: so long as the signer is regarded as the "owner" of the property, the signatures of both a husband and wife on any type of declaration are not required for that declaration to be effective.  *See* Idaho Code § 55-1004(2) (requiring the "owner" to execute the declaration).  While a married individual is prohibited from conveying or encumbering his or her homestead "unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife," Idaho Code § 55-1007, a declaration of homestead is not regarded as a conveyance. *Burbank v. Kirby*, 55 P. 295, 296 (Idaho 1898) ("A homestead is not a conveyance. It possesses none of the essential requisites of a conveyance.").  The court in *Burbank* explained that Idaho Code § 55-813 defines a conveyance as including "every instrument in writing by which any estate or interest in real property is created, alienated, mortgaged or encumbered, or by which the title to any real property may be affected, except wills." *Id.* at 296.[7]  A declaration affecting a choice of homestead contains none of the requisites of a conveyance, as it expresses no grantor, grantee or consideration, and does not effect a transfer of or change in the title. *Id.*

Whenever Idaho has required a recorded declaration to establish a

---

[7]   The language of Idaho Code § 55-813 has remained unchanged since *Burbank* was decided.

homestead, wives (as well as their husbands) were permitted to execute and

acknowledge such declarations on behalf of the marital community, provided the

strictures of the statute were observed. *Burbank*, 55 P. at 196.[8]  Married men and

women are still permitted to select a homestead for the marital community from

either community or jointly owned property or the separate property of their

spouse.  Idaho Code § 55-1002 ("If the owner is married, the homestead may

consist of the community or jointly owned property of the spouses or the separate

property of either spouse . . . .").[9]

---

[8]  The historical language of the statute was as follows:

> In order to select a homestead, the husband or other head of
> the family, or in case the husband has not made such
> selection, the wife must execute and acknowledge in the
> same manner as a conveyance of real property is
> acknowledged, a declaration of homestead and file the
> same for record.

*Burbank*, 55 P. at 296 (quoting Section 3070, Rev. St. Idaho).  Thus, if a woman's
husband had neglected to execute and record the required declaration establishing the
couple's homestead, the wife could do so without her husband's signature or consent.

[9]  The ability of a married woman to unilaterally select a homestead for the
marital community could greatly disadvantage her husband, as was demonstrated in
*Clark v. Clark*, 47 P.2d 914, 916 (Idaho 1935).  There, in the context of an acrimonious
marriage and bitter divorce, the wife executed and recorded a declaration of homestead
declaring her husband's farm, which was his separate property, to be her homestead.  She
then refused to execute an abandonment of homestead, which required both their
signatures, and thereby prevented her husband from refinancing the mortgage debt on the
property.  Her husband subsequently lost the farm due to foreclosure.  *See Clark v. Clark*,
69 P.2d 980, 981 (Idaho 1937) (discussing the facts in the context of the parties' divorce
action).  The Idaho Supreme Court recognized that the Idaho statutes were written so that
married women could, if their husbands had so neglected, execute and file a declaration

MEMORANDUM OF DECISION - 17

In this case, all three of these maxims are important for determining the status of Bradley's homestead exemption claim at the moment he filed his bankruptcy petition.  Although Bradley and Wendy technically executed and recorded declarations expressing their own intentions concerning what they thought constituted an individual homestead exemption, because they were still married at the time, all three of their declarations had distinct legal consequences for their single homestead and the exemption that Bradley now claims in his bankruptcy case, as is examined below.

**D.  Bradley's Homestead Exemption.**

Because of his status as the first to file, Bradley's bankruptcy estate included two potential homesteads: the House and White Owl Farm.  *See Field*, 05.1 I.B.C.R. at 13 (explaining that, under Idaho Code § 55-1001(2), there are two generally recognized types of homesteads, the first category including dwelling houses, the second unimproved ground).  Under Idaho law, the type of homestead, the debtor's living arrangements, and the debtor's intentions determine how a debtor must establish an exemption when there are two potential homesteads from which to choose.

In this case, Bradley claimed a homestead exemption in White Owl Farm, the bare ground.  Although he obviously does not reside on this land, he

---

of homestead to exempt and thereby protect the marital home.  *Clark*, 47 P.2d at 916.

intends to do so in the future. The farm therefore qualifies as a homestead eligible for an exemption because under state law, White Owl Farm is "unimproved land owned [by the debtor] with the intention of placing a house or mobile home thereon and residing thereon." Idaho Code § 55-1001(2).

But, on bankruptcy day, Bradley owned and was living in the House, and had lived there since its purchase. Therefore, the House is also a homestead eligible for the protections of the exemption, because it is the "dwelling house or the mobile home in which the [debtor-]owner resides . . . ." Idaho Code § 55-1001(2). In this case, the House was protected by the exemption automatically from and after the time Bradley and Wendy occupied the House as their principal residence under Idaho Code § 55-1004(1).

Because of the House's prior status as an exempt homestead and Bradley's decision to continue living there, before Bradley could claim White Owl Farm as his homestead and thereby gain the protection of the exemption he was required to comply with the provisions of Idaho Code § 55-1004(2):

> An owner who selects a homestead from unimproved or improved land that is not yet occupied as a homestead must execute a declaration of homestead and file the same for record in the office of the recorder of the county in which the land is located. However, if the owner also owns another parcel of property on which the owner presently resides or in which the owner claims a homestead, the owner must

MEMORANDUM OF DECISION - 19

> also execute a declaration of abandonment of
> homestead on that other property and file the same for
> record with the recorder of the county in which the
> land is located.

Idaho Code § 55-1004(2). Bradley was therefore required to execute and record

both a declaration of homestead as to the bare ground and a declaration of

abandonment as to the House. *In re Field*, 05.1 I.B.C.R. at 14; *In re Moore*, 01.4

I.B.C.R. 147, 149 (Bankr. D. Idaho 2001). Both declarations must contain the

information required by Idaho Code § 55-1004(3) and (4) and be properly

acknowledged, Idaho Code § 55-1004(5). *See In re Field*, 05.1 I.B.C.R. at 15

(discussing the requirements of declarations). Once the declarations mandated by

this statute are filed, the unimproved land is exempt and the property on which the

owner resides is no longer exempt. Idaho Code § 55-1004(1).

　　　　Bradley's declarations satisfy all of the statutory requirements.

Regarding the House, he repudiated his claim of homestead, included a legal

description, and declared the abandonment of his automatic exemption effective as

of December 22, 2004. *See* Idaho Code § 55-1004(4). In his declaration of

homestead for White Owl Farm, Bradley stated that he intended to reside there in

the future, included a legal description of the land, and estimated its cash value at

$50,000. *See* Idaho Code § 55-1004(3). Both declarations contained an

appropriate acknowledgment, *see* Idaho Code § 55-710, and were recorded in the

MEMORANDUM OF DECISION - 20

proper counties.  Therefore, the Court concludes that Bradley had established a

valid homestead and exemption by declaration in White Owl Farm on the date he

filed his bankruptcy petition.

**E.  Wendy's Declaration of Nonabandonment Was Ineffective In This Case.**

But more must be said about Bradley's situation.  Bradley was still

married to Wendy at the time he recorded his declarations.  Recall, though she was

separated from Bradley and not living at the House, Wendy executed and recorded

her own declaration advising the world that she did not intend to abandon her

homestead, and the exemption, in the House.  Significantly, she recorded her

declaration of nonabandonment *after* Bradley recorded his declaration expressly

abandoning the House as his homestead.

Wendy's declaration also contained all the information required by

Idaho Code § 55-1006 for a declaration of nonabandonment: she claimed the

House as her homestead; declared her intent to return to the House; claimed no

other property as her homestead; indicated where she would be living while absent

from the House; estimated her expected length of absence; explained the reason for

her absence as caused by her separation from her husband; and gave a legal

description of the property.  Idaho Code § 55-1006(1)–(3).  Her signature was

properly acknowledged as required by Idaho Code §§ 55-1006 and 55-710, and

she recorded the declaration in the recorder's office of the county where the House

was located.  Generally, then, her declaration could have affected the couple's

homestead since she, too, possessed the authority to execute and record a

declaration on the couple's behalf.

But, under these facts, Wendy's declaration of nonabandonment had

no practical effect upon Bradley's two declarations.  This is true because a

declaration of nonabandonment serves a different purpose: to preserve a

homestead, and thereby the automatic exemption, established by the owner's

occupation of a dwelling house as a principal residence when the owner expects to

be absent from that property for an extended period of time.  *See* Idaho Code 55-

1006; *In re Field*, 05.1 I.B.C.R. at 15 (explaining that the declaration of

nonabandonment is intended to preserve an otherwise valid automatic homestead

exemption); *In re Conley*, 00.1 I.B.C.R. 15, 20–21 (Bankr. D. Idaho 2000)

(explaining that the declaration of nonabandonment serves to preserve an

exemption on property established as a homestead by occupation as a principal

residence); *In re Cavanaugh*, 175 B.R. 369, 371–72 (Bankr. D. Idaho 1994)

(explaining that the legislature intended declarations of nonabandonment to be

filed prior to or within six months of the owner's absence from the property to

preserve the homestead and prevent the presumption of abandonment from

MEMORANDUM OF DECISION - 22

arising).

When Bradley filed his declaration of abandonment, that caused an abandonment of the parties' previously established homestead and the exemption that had arisen automatically in the House by operation of Idaho Code § 55-1004(1). As of that moment, Bradley and Wendy effectively had no homestead and no exemption. Wendy's subsequent declaration of nonabandonment could only *preserve* an otherwise preexisting homestead and automatic exemption established by residency; it could not reestablish a homestead and exemption that had been expressly abandoned by Bradley on the parties' behalf. *In re Field*, 05.1 I.B.C.R. at 15 ("[A] declaration of nonabandonment can not preserve a homestead exemption if no such exemption existed in the first place.").

The results of this odd, but obviously scripted series of events is that Bradley's declarations, recorded prior to his bankruptcy filing, were effective to establish White Owl Farm as his exempt homestead. Trustee's objection to his claim of exemption in White Owl Farm will be overruled.

## F. Consolidation Would Not Enable Debtors to Claim An Additional Homestead Exemption.

Debtors have filed motions for consolidation and joint administration under Fed. R. Bankr. P. 1015 in their respective cases. Docket No. 26, Case No.

MEMORANDUM OF DECISION - 23

05-40208; Docket No. 19, Case No. 05-40209.[10]  In cases involving two petitions pending in the same court by a husband and wife, Rule 1015(b) permits the Court to order a joint administration of the two estates.  But prior to entering such an order, the Court is required to consider the protection of the interests of creditors of the different estates against potential conflicts of interest.  Fed. R. Bank. P. 1015(b).  The Panel in *Olson-Ioane v. Derham-Burk* (*In re Olson*), 253 B.R. 73, 75 (B.A.P. 9th Cir. 2000) considered, in *dicta*, joint administration to be an appropriate remedy under similar circumstances.

While the motions are not now before the Court, in the interests of justice, the Court feels compelled to note that joint administration of the two bankruptcy cases will not permit Bradley and Wendy to each claim a homestead exemption in different properties.  For the reasons explained above, married couples, whether filing separately or jointly, can only claim one homestead, and consequently one exemption.  *C.f. In re Yackley*, 03.1 I.B.C.R. at 84 (holding that "bifurcation" of a joint case into two individual bankruptcy cases would not enable the husband to claim an additional homestead exemption for himself).

---

[10]  Rule 1015 permits "joint administration," as opposed to "consolidation," in a case such as this.  Consolidation is considered when there are two cases pending by or against the same debtor, not two different debtors.  Fed. R. Bankr. P. 1015(a). Consolidation is also considered when a joint petition is filed.  11 U.S.C. § 302.

MEMORANDUM OF DECISION - 24

## CONCLUSION

Wendy may not claim a homestead exemption in the House in her bankruptcy case because all her interest in the House had passed to the bankruptcy estate in Bradley's case based upon his earlier filing.  Bradley's claim of a homestead exemption in White Owl Farm is proper because he executed the proper declarations and Wendy's intervening declaration had no effect.  His exemption will therefore be allowed.

Because there is no exemption established in the House, both Wendy's and Bradley's respective requests to reaffirm the debt owed to Creditor Zions Bank will also be denied.

The Court will enter appropriate orders in each case.


Dated: August 22, 2005

_____

Honorable Jim D. Pappas
United States Bankruptcy Judge